**CORRECTED**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## 19-2184

ALFRED PROCOPIO, JOHNNIE HARPER,
MICHAEL YATES, MICHAEL KVINTUS,
BLUE WATER NAVY VIETNAM VETERANS
ASSOCIATION, INC., AND MILITARY-VETERANS
ADVOCACY, INC.

                                 Petitioners,

    v.

Secretary of Veterans Affairs,

                                 Respondent.

_____

Petition for Review of Actions of the Secretary of Veterans Affairs Staying
Claims for Blue Water Navy Veterans Pursuant to 38 U.S.C. § 502

_____

## ORIGINAL BRIEF OF PETITIONERS

_____

                             ATTORNEY FOR PETITIONERS
                             John B. Wells
                             Military-Veterans Advocacy
                             LA Bar #23970
                             P. O. Box 5235
                             Slidell, LA 70469-5235
                             769 Robert Blvd, Suite 201D
                             Slidell, LA 70458
                             985-641-1855
                             JohnLawEsq@msn.com

**FORM 9. Certificate of Interest**                                                                                                 **Form 9**
                                                                                                                                    **Rev. 10/17**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Alfred Procopio, Jr. et. al    **v.**    Robert L. Wilkie, Secretary of Veterans Affairs

Case No.  19-2184

**CERTIFICATE OF INTEREST**

Counsel for the:

☒ (petitioner) ☐ (appellant) ☐ (respondent) ☐ (appellee) ☐ (amicus) ☐ (name of party)

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Alfred Procopio, Jr. | Alfred Procopio, Jr. | Not Applicable |
| Johnnie Harper | Johnnie Harper | Not Applicable |
| Michael Yates | Michael Yates | Not Applicable |
| Michael Kvintus | Michael Kvintus | Not Applicable |
| Blue Water Navy Vietnam Veterans Assn, Inc. | Blue Water Navy Vietnam Veterans Assn, Inc. | Not Applicable |
| Military-Veterans Advocacy, Inc. | Military-Veterans Advocacy, Inc. | Not Applicable |
|  |  |  |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

Not Applicable

**FORM 9. Certificate of Interest**                                    **Form 9**
                                                                       **Rev. 10/17**

5.   The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).  (The parties should attach continuation pages as necessary).
None

7/25/2019                                    /s/ John B. Wells
_____              _____
            Date                                  Signature of counsel

Please Note: All questions must be answered    John B.Wells
                                             _____
                                                  Printed name of counsel

        Eric Bruskin Dept of Justice
cc:    _____

[ Reset Fields ]

# TABLE OF CONTENTS

Certificate of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  I

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

    I.    This Court has Jurisdiction to Review Secretary Wilkie's July 1, 2019 memorandum, ordering the stay of claims, with legal effects outside of the agency, and as such is entitled to judicial review under 5 U.S.C. §§ 502 and 552(a)(1)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

    II.    The Blue Water Navy Vietnam Veterans Act of 2019 (H.R. 299) (Pub. L 116-23) Does Not Authorize the Secretary of the Department of Veterans Affairs to Issue a Stay of Claims for Benefits Filed under § 1116A Prior to the Statute's Effective Date of January 1, 2020. . . . . . .  27

        A. Based on the Plain Meaning of § 3(g), Respondent Is Not Authorized to Issue a Stay Until the Effective Date of January 1, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

        B. Even If the Court Decides the Language Authorizing the Stay Prior to the Effective Date is Ambiguous, the Pro-Claimant Canon

of Statutory Construction Requires It be Construed in the Most Veteran-Friendly Manner. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

III. Pub.L 116-23 Does Not Authorize the Secretary of the Department of Veterans Affairs to Issue a Stay of Claims for Benefits Filed Under § 1116 and/or *Procopio v. Wilkie*, 913 F.3d 1371, 1380-81 (Fed. Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

IV. The stay of claims for benefits, issued on July 1, 2019, even if ripe, is an abuse of discretion by the VA. . . . . . . . . . . . . . . . . . . . . . . . . 42

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

## STATEMENT REGARDING ORAL ARGUMENT

Appellant submits that oral argument may be of some assistance to the court in applying the unique veterans' law, canons of statutory construction and internal workings and action of the Department of Veterans Affairs. Oral argument might also assist the Court in ensuring that all facts in the record are properly vetted and considered.

# TABLE OF AUTHORITIES

**Cases:**

*American Mail Line v. Gulick,* 411 F.2d 696, 701 (D.C. Cir.1969). . . . . . . . . . . . 22

*Animal Legal Def.Fund v. Quigg,* 932 F.2d 920, 927 (Fed. Cir. 1991). . . . . . . . . 25

*Ass'n of Flight Attendants CWA, AFL-CIO v. Huerta,* 785 F.3d 710
(D.C. Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Auer v. Robbins,* 519 U.S. 452 (1997). . . . . . . . . . . . . . . . . . 14, 18, 20, 24, 37

*Boone v. Lightner,* 319 U.S. 561 (1943). . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

*Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct.
2778, 81 L.Ed.2d 694 (1984). . . . . . . . . . . . . . . . . . . . . 6, 9, 14, 19, 20, 33, 34

*Chrysler Corp.v. Brown,* 441 U.S. 281 (1979). . . . . . . . . . . . . . . . . . 22, 24

*Click-To-Call Techs., LP v. Ingenio, Inc.,* 899 F.3d 1321 (Fed. Cir. 2018). . . . . . 35

*Cmty. Nutrition Inst. v. Young,* 818 F.2d 943 (D.C. Cir.1987). . . . . . . . . . . . . . 23

*Cushman v. Shinseki,* 576 F.3d 1290 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . 33

*DAV v. Sec'y of Veterans Affairs,* 859 F.3d 1072 (Fed. Cir. 2917). . . . . . . 12, 24, 25

*Earle v. Brown,* 6Vet. App. 558, 562 (1994). . . . . . . . . . . . . . . . . . . . . . . . 23

*Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612 (2018). . . . . . . . . . . . . . . 14, 16, 19, 34

*Erlenbaugh v. United States,* 409 U.S. 239, 93 S. Ct. 477 (1972). . . . . . . . . . . . 29

*Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,* 443 U.S. 340 (1979). . . . 22

*Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946). . . . . . . . . . 37

*Fugere v Derwinski,* 1 Vet. App. 103 (1990). . . . . . . . . . . . . . . . . . . . . . . . 23

*Gambill v. Shinseki,* 576 F.3d 1307 (Fed. Cir.2009). . . . . . . . . . . . . . . . . . . 20, 37

*Gardebring v. Jenkins,* 485 U.S. 415; 108 S. Ct. 1306 (1988). . . . . . . . . . . . . . . 30

*Gazelle v. Shulkin,* 868 F.3d 1006 (Fed. Cir. 2017). . . . . . . . . . . . . . . . . . . . . . 34

*Gray v. McDonald,* 27 Vet.App. 313 (2015). . . . . . . . . . . . . . . . . . . . . . 7, 8, 41

*Gray v. Wilkie.,* 875 F.3d 1102 (Fed.Cir.(2017). . . . . . . . . . . . . . . . . . . . 8, 42

*Guardians Ass'n v. Civil Serv. Comm'n of City of New York,* 463 U.S. 582, 103 S. Ct. 3221, 77 L. Ed. 2d 866 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Guerra v. Shinseki,* 642 F.3d 1046 (Fed. Cir. 2011). . . . . . . . . . . . . . . .22, 23, 25

*Haas v. Peake,* 544 F.3d 1306 (Fed. Cir. 2008). . . . . . . . . . . . . . . . 1, 6, 7, 8, 21, 22

*Hayes v. Brown,* 5 Vet. App. 60 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hibbs v. Winn,* 542 U.S. 88, 124 S. Ct. 2276 (2004). . . . . . . . . . . . . . . . . . . . . 28

*Henderson ex rel. Henderson v. Shinseki,* 131 S.Ct.1197 (2011). . . . . . 7, 14, 19, 36

*Hudick v. Wilkie,* 755 F. App'x 998 (Fed. Cir. 2018). . . . . . . . . . . . . . . . 12, 25, 27

*Johnson v. Robison,* 415 U.S. 361 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Kirkendall v. Dep't of the Army,* 479 F.3d 830 (Fed. Cir. 2007). . . . . . . . . . . . . . 35

*Kisor v. Wilkie,* 139 S. Ct. 2400 (2019). . . . . . . . . . . . . . . . . . . 14, 19, 20, 35, 37

*Kyocera Solar, Inc. v. ITC,* 844 F.3d 1334 (Fed. Cir. 2016). . . . . . . . . . . . . . . . 34

*Lamb v. Principi,* 284 F.3d 1378 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . 15

*Landgraf v. USI Film Prod.,* 511 U.S. 244, 114 S.Ct. 1483 (1997). . . . . . . . . . . . 32

*Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996). . . . . . . . . . . . . . . . . . . . . . . 32

*Maness v. Meyers,* 419 U.S. 449, 95 S. Ct. 584 (1975). . . . . . . . . . . . . . . . . . . 44

*Milena Ship Management Company v. R. Richard Newcomb,* 995 F.2d 620 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Military Order of the Purple Heart v. Sec'y of Veterans Affairs,* 580 F.3d 1293 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 25

*Motor Vehicles Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Movsisian v. Ashcroft,* 395 F.3d 1095 (9th Cir.2005). . . . . . . . . . . . . . . . . 17, 43

*Nat'l Mining Ass'n v. McCarthy,* 758 F.3d 243 (D.C.Cir. 2014). . . . . . . . . . . . . . 23

*Nat'l Org. of Veterans' Advocates, Inc v. Secretary of Veterans Affairs,* 260 F.3d 1365 (Fed. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Orengo Caraballo v. Reich,* 11 F.3d 186 (D.C. Cir. 1993). . . . . . . . . . . . . . . . 22

*Paralyzed Veterans of America v. West,* 138 F.3d 1434 (Fed. Cir. 1998). . . . . . . . 22

*Procopio v. Wilkie,* 913 F.3d 1371 (Fed. Cir. 2019). . . . . . . . . . . . . . . . . . *passim*

*Rahman v. Napolitano,* 814 F. Supp. 2d 1098 (W.D. Wash. 2011). . . . . . . . . . . . 43

*Reizenstein v. Shinseki,* 583 F.3d 1331 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . 18

*SAS Inst., Inc. v. Iancu,* 138 S. Ct. 1348 (2018). . . . . . . . . . . . . . . . . . . . . . 34

*Shalala v. Guernsey Mem'l Hosp.,* 514 U.S. 87 (1995). . . . . . . . . . . . . . . . . . 22

*Shanti, Inc. v. Reno,* 36 F.Supp.2d 1151 (D.Minn.1999). . . . . . . . . . . . . . . 17, 43

*Snyder v. Secretary of Veterans Affairs,* 858 F.3d 1410 (Fed. Cir. 2017). . . . . . . . 25

*Soc'y Nat. Bank of The Miami Valley v. Haynes,* 18 B.R. 582, 583 (Bankr. S.D. Ohio 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Starry Assocs., Inc. v. United States,* 892 F.3d 1372 (Fed. Cir. 2018). . . . . . . . . . 35

*Tapis Int'l v. INS,* 94 F.Supp.2d 172 (D.Mass.2000). . . . . . . . . . . . . . . . . 17, 43

*Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 114 S. Ct. 2381 (1994). . . . . . 30

*United States v. John C. Grimberg Co.,* 702 F.2d 1362 (Fed. Cir. 1983). . . . . . . . 39

*United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677 (1947). . . . . . 44

*Winsett v. Principi*, 341 F.3d 1329 (Fed. Cir. 2003). . . . . . . . . . . . . . . . . . . 18

**Statutes:**

5 U.S.C.A. § 706. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20, 43

28 U.S.C. § 2412. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

38 U.S.C. § 1116. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1116A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

38 U.S.C. § 501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 31

38 U.S.C. § 502. . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 4, 5, 6, 8, 18, 21

38 U.S.C. § 552. . . . . . . . . . . . . . . . . . . . . . iv, 4, 5, 6, 20, 21, 24, 25, 26

38 U.S.C. § 553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 21

38 U.S.C. § 7104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 26

38 U.S.C § 7292. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 27

Blue Water Navy Vietnam Veterans Act of 2019 (Pub.L. 116-23). . . . . . . . . . . . . . .

**Other Authorities:**

https://republicans
veterans.house.gov/news/documentsingle.aspx?DocumentID=2359 . . . . . . . . . 3, 11

Fed. R. App. P. 28. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. Cir. R. 28. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. Cir. R. 47.12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. Cir. R. 47.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

38 C.F.R. § 3.309. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Convention on the Territorial Sea and Contiguous Zone, [1958] 15 U.S.T. 1607, T.I.A.S. No. 5639. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United Nations Convention on the Law of the Sea, 1833 U.N.T.S. 397 (Dec. 10, 1982, *entered into force on* Nov. 16, 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Statement of Related Cases

No other matter in or from the same proceeding in the Veterans Court was previously before this or any other appellate court.

Counsel is not aware of any cases in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal, within the meaning of Fed. Cir. R. 47.5(b) and the accompanying practice note.

## INTRODUCTION

Blue Water Navy" (BWN) veterans struggled for their earned benefits for close to two decades. On January 29, 2019, these veterans finally received hope that their mistreatment at the hands of the VA was coming to an end with this Court's historical decision in *Procopio v. Wilkie*, 913 F.3d 1371, 1380-81 (Fed. Cir. 2019). *Procopio*, in overruling *Haas v. Peake*, 544 F.3d 1306 (Fed. Cir. 2008), sent an unmistakable message to the VA that veterans who served in the 12 nautical mile territorial sea of the "Republic of Vietnam" were entitled to 38 U.S.C. § 1116's presumption. "By using the formal term "Republic of Vietnam," Congress unambiguously referred, consistent with that backdrop, to both its landmass and its territorial sea". *Procopio v. Wilkie*, 913 F.3d at 1376.

After a decade of dithering, Congress finally decided to provide relief for these veterans. On June 25, 2019, Congress passed, and President Trump signed, the

Blue Water Navy Vietnam Veterans Act of 2019 (H.R. 299) (Pub.L. 116-23), hereinafter referred to as the Act. Congressional intent with this Bill was to extend coverage for the BWN veterans and they did so within geographical coordinates detailing what shall be treated as "offshore" of Vietnam. These geographical points are similar to the territorial sea claimed by Vietnam, although do not completely reflect the Vietnamese declaration.

The Act § 3(c)(3), authorizes the Secretary to issue a stay on certain pending claims for benefits until such time the Secretary "commences the implementation of such section § 1116A". BWN veterans, Congress and the various Veterans Service Organizations (VSOs) were surprised however with Secretary Wilkie's premature imposition of the stay provision and his application to claims brought under § 1116.

Section 3(g) of the Act plainly states: "The amendments made by this section shall take effect on January 1, 2020". Nothing in § 3(c)(3), or any other provision of the Act, authorizes a stay prior to the effective date. Based on the plain meaning of the Act, the stay issued by Secretary Wilkie on July 1, 2019, is not ripe and must be withdrawn until the Act's January 1, 2020 effective date.

Moreover, this untimely and unlawful stay does not differentiate between §1116 and §1116A. Section 2(a) makes abundantly clear that §1116A does not replace §1116. Rather it is a new section entirely. The stay issued by Secretary Wilkie

affects claims that "may be affected by the Act".  Without proper clarification it is highly likely that the Veterans Benefits Administration and the Board of Veterans' Appeals will interpret the stay as precluding all claims related to agent orange exposure, including those authorized by §1116 and *Procopio*.  Even Mr. Procopio will be affected by this stay.[1]  Mr. Harper will likely not survive the stay.

While it may become necessary for the Secretary to issue a stay after §1116A takes effect, interpreting this statute to authorize a stay prior to the effective date is an irrational reading that will negatively affect veterans.  The irrationality of this interpretation is underscored by the position of Mark Takano, the sponsor of the bill.  Appx58.

The significance of this action is apparent when the age of BWN veterans is considered.  According to ranking member of the House Committee on Veterans' Affairs, Phil Roe, M.D. (R-Tenn), "we're losing not just Blue Water, but all Vietnam-era veterans my age. 523 a day are dying".  https://republicans veterans.house.gov/news/documentsingle.aspx?DocumentID=2359. Mr. Harper will soon become a part of these statistics.

Blue Water Navy veterans have waited long enough for the VA to do the right thing and like Mr. Harper, many are running out of time.  This Court should reject

---

[1] Procopio and the VA are discussing possible settlement of some of the claims which may exempt those claims from the stay.   Some of Mr Procopio's  claims which were adjudicated and remanded by the Veterans Court would not be covered in any potential settlement.

the Secretary's unlawful interpretation of the Act and return hope to these brave BWN veterans who have waited so long for benefits that they have earned.

### Statement of Jurisdiction

Pursuant to Fed. R. App. P. 28(a)(4) and Fed. Cir. R. 28(a)(5), Petitioners state as follows:

Respondent Secretary of Veterans Affairs is authorized to prescribe rules and regulations which are necessary and appropriate to carry out the laws administered by the Department of Veterans Affairs ("VA"). Effective January 1, 2020, Respondent has the authority to issue stays for claims pending on the date of the enactment of Pub. L. 116-23 provided they were brought under the provisions of 38 U.S.C. §1116A.

This Court has jurisdiction over this petition pursuant to 38 U.S.C. § 502. Section 502 provides this Court with exclusive jurisdiction to review, in accordance with the Administrative Procedures Act (hereinafter "APA"), direct challenges to the Secretary's rule making process and the substantive rules and regulations adopted by the VA pursuant to 5 U.S.C. §§552(a)(1) and 553. *See Military Order of the Purple Heart v. Sec'y of Veterans Affairs*, 580 F.3d 1293, 1295 (Fed. Cir. 2009).

On July 1, 2019, the Respondent issued a final rule in the nature of a stay provision for all Blue Water Navy claims. The Respondent failed to publish this

4

rule in the Federal Register as required by law. Appx01. Petitioner challenges the validity of the Final Rule and demanded that it be rescinded or clarified. Appx02-03. The stay meets the definition of a "rule" as defined by the APA because it is "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the designed to implement, interpret, or prescribe law or policy." *See Military Order of the Purple Heart* at 1296 (citing APA at 5 U.S.C. § 551(4)). Both APA provisions set forth at 5 U.S.C. § 552(a)(1)(D) and § 553(b) are implicated by Respondent's Final Rule.

Pursuant to Fed. Cir. R. 47.12, an action for judicial review under 38 U.S.C. § 502 must be filed within 60 days of the Final Rule being issued. The Petitioners submitted their § 502 petition to this Court on July 22, 2019, 22 days after the Final Rule was issued, and thus it has been timely filed.

The Final Rule challenged in this petition adversely affects the substantive rights to VA benefits of the Petitioners particularly, as well as of all similarly situated Blue Water Navy veterans generally.

### Statement of Issues

I.    Whether this Court Has Jurisdiction to Review Secretary Wilkie's July 1, 2019 Memorandum, Ordering the Stay of Claims, with Legal Effects

Outside of the Agency, and as Such Is Entitled to Judicial Review under 5 U.S.C. §§ 502 and 552(a)(1)(D).

II.    Whether the Blue Water Navy Vietnam Veterans Act of 2019 (H.R. 299) (Pub.L. 116-23) Authorizes the Secretary of the Department of Veterans Affairs to Issue a Stay of Claims for Benefits Filed under § 1116A Prior to the Statute's Effective Date of January 1, 2020.

III.    Whether Pub.L 116-23 Does Not Authorize the Secretary of the Department of Veterans Affairs to Issue a Stay of Claims for Benefits Filed Under § 1116 and/or *Procopio v. Wilkie*, 913 F.3d 1371, 1380-81 (Fed. Cir. 2019).

IV.    The Stay of Claims for Benefits, Issued on July 1, 2019, Even If Ripe, Is an Abuse of Discretion by the VA.

### Statement of the Case

In 2002, the VA revoked the presumption of herbicide exposure to "Blue Water Navy" veterans who served in the bays, harbors and the territorial sea of the Republic of Vietnam.[2]  In 2008, this Court, in a 2-1 decision in *Haas v. Peake*, 525F.3d 1168 (Fed. Cir. 2008), granted *Chevron* deference to the VA's decision to deny the presumption of exposure to those who served off the coast.  On rehearing, the *Haas* Court noted that they did not apply the pro-veteran canon of construction

---

2  Previously the crews of ships operating within the Vietnam Service Medal demarcation area, approximately 100 nautical miles from shore, were granted the presumption.

6

required by *Henderson ex rel. Henderson v. Shinseki* 131 S.Ct.1197 (2011). *Haas v. Peake*, 544 F.3d 1306 (Fed. Cir 2008).

In *Gray v. McDonald,* 27 Vet.App. 313 (2015), the Court of Appeals for Veterans Claims distinguished *Haas* by concentrating on Da Nang Harbor. The *Gray* court found that as the bays and harbors were outside the scope of *Haas*, they were free to review the VA policy. The *Gray* court noted that the rivers, where veterans were awarded the presumption of exposure under the VA policy, discharged into the bays and harbors. That river water would mix with the saltwater brought in via tidal surge from the South China Sea. As the rivers were heavily sprayed with Agent Orange the discharge "plume" from the rivers would carry the herbicide for some distance into the harbors, bays and the South China Sea. Thus, the *Gray* court determined that the exclusion of Da Nang Harbor from the "inland waterways" category did not comply with the intent of the underlying statute and regulation. *Gray*, 27 Vet. App. at 324-26. The Veterans Court went on to explain that the intent of the statute and regulation was "providing compensation to veterans based on the likelihood of[their] exposure to herbicides." *Id.* at 322.

The VA explained that their decision to exclude bays and harbors was based on its "depth and ease of entry---and not on spraying." *Id.* at 324. This led the *Gray* court to properly hold that the VA policy was "irrational." *Id.* At 323-24 and "arbitrary and capricious because the decision was based on VA's flawed

interpretation of [the regulation]." *Id.* at 326. The Secretary did not appeal *Gray* and the decision became final.[3]

Subsequently, on October 2, 2016, MVA submitted a rulemaking request that encompassed Da Nang and Nha Trang Harbor. Appx48-50. A follow up letter was sent on February 14, 2017. Appx53-55. No response was received.

On January 29, 2019, this Court, in a 9-2 decision, overruled their prior decision in *Haas v. Peake* 525F.3d 1168 (Fed. Cir. 2008) by deciding *Procopio v. Wilkie,* supra. The *Procopio* court held that Congress spoke directly to the question of whether those who served in the 12 nautical mile territorial sea of the "Republic of Vietnam" are entitled to § 1116's presumption. This court concluded they are. "[T]he intent of Congress is clear, that is the end of the matter". *Procopio v. Wilkie*, 913 F.3d 1371, 1380-81 (Fed. Cir. 2019). The court further stated:

> [W]hen the Agent Orange Act was passed in 1991, the "Republic of Vietnam" included both its landmass and its 12 nautical mile territorial sea. The government has pointed to no law to the contrary. This uniform international law was the backdrop against which Congress adopted the Agent Orange Act. By using the formal term "Republic of Vietnam," Congress unambiguously referred, consistent with that backdrop, to both its landmass and its territorial sea. We also note that the statute expressly includes "active military, naval, or air

3  After the case was remanded, the Secretary doubled down on his policy by issuing a change to the M21-1 Manual. Mr. Gray filed a petition under 38 U.S.C. § 502 to challenge that rule. This Court dismissed for lack of jurisdiction. *Gray v. Wilkie*, 875 F.3d 1102, Fed.Cir.(2017). The Supreme Court granted *certiorari Gray v. WIlkie.*, 139 S.C. 451 (2018) Although dismissed as moot, the judgment in *Gray* was vacated 2019 WL 2570620, U.S., June 24, 2019.

service . . . in the Republic of Vietnam," § 1116(a)(1), reinforcing our
conclusion that Congress was expressly extending the presumption
to naval personnel who served in the territorial sea.  We conclude
at *Chevron* step one that the intent of Congress is clear from the text of
§ 1116.

913 F.3d 1371 (Fed. Cir. 2019).

On March 29, 2019, the VA Office of General Counsel, through the
Principal Deputy General Counsel, issued guidelines for implementation of
Procopio to include entrance into a bay or harbor or service within 12 miles of
land. Appx27-30.

On April 11, 2019, MVA met with Secretary Wilkie to discuss
implementation of the *Procopio* decision.  MVA provided the VA Secretary
information and offered to assist with the implementation.  Appx6-39.

Subsequently, on June 25, 2019, Congress passed, and President Trump
signed, the Blue Water Navy Vietnam Veterans Act of 2019 (H.R. 299) (Pub.L.
116-23), hereinafter referred to as the Act.  The Act did not repeal or amend §
1116. Instead it added a completely new section.

The purpose of the Act, as described in *§ 1116A: Presumptions of service
connection for veterans who served offshore of the Republic of Vietnam*, was
touted as a means to "extend the presumption of exposure for purposes of
entitlement to service connection for diseases associated with exposure to herbicide

agents, such as Agent Orange to Blue Water Navy (BWN) Vietnam veterans"[4]

*House Report number 116-58 from Congressman Takano of the Committee of*

*Veterans' Affairs on May 10, 2019.* Congressional intent to extend coverage for

the BWN veterans, previously decided in *Procopio*, is apparent and unambiguous

by noting the geographical coordinates listed in section (d) of the Act, labeled

*Determination of offshore*, which does in fact expand the ruling in *Procopio* by

approximately 360 square miles of ocean.

Congress authorized Respondent to issue guidance to implement the Act

before prescribing new regulations. In addition, Congress authorized Respondent

to stay pending claims related to service and diseases covered in the Act "pending

at the Veterans Benefits Administration or the Board of Veterans' Appeals on or

after the date of the enactment of this Act and before the date on which the

Secretary commences the implementation of such section 1116A". The Act did

not address claims brought under § 1116.

On July 1, 2019, the Secretary issued the stay that is the subject of this

lawsuit. Appx01. MVA demanded that the Secretary rescind or modify the stay to

exempt claims brought under § 1116 and *Procopio*. Appx02-03.

---

[4] BWN veterans are defined as veterans who served offshore of the Republic of Vietnam (defined below) between the dates of January 9, 1962, and May 7, 1975.

10

On July 10, 2019, the Veterans Benefits Administration confirmed their position that the Blue Water Navy Vietnam Veterans Act governs implementation of the *Procopio v. Wilkie* decision. Appx04.

On July 17, 2019, the Secretary responded to the MVA letter, refusing to rescind or modify the stay.[5] Appx56-57. Various Members of Congress, including the bill's sponsor, have also stated that the stay is not authorized for *Procopio* claims. Appx40-42, Appx58-59. Additionally numerous Veterans Service Organizations who supported the Act, have made similar representations to the Secretary. Appx43-44, Appx60-62.

According to ranking member of the House Committee on Veterans' Affairs, Phil Roe, M.D. (R-Tenn), "we're losing not just Blue Water, but all Vietnam-era veterans my age. 523 a day are dying". https://republicans-veterans.house.gov/news/documentsingle.aspx?DocumentID=2359. On July 8, 2019, MVA wrote Respondent requesting the stay be rescinded or clarified. Due to the age of Vietnam veterans, time is of the essence in this matter. .

### Summary of the Argument

Administrative agency actions are presumed to be reviewable under the Administrative Procedure Act (APA), which provides for final agency action for

---

5 The Petition indicates that the Secretary did not respond. His response was received on July 23, 2019, the day after the Petition was filed. Appx56-57

which there is no other adequate remedy at law. 2 Fed. Proc., L. Ed. § 2:263.

Judicial review of an agency action is limited to relevant questions of law,

including interpreting constitutional and statutory provisions. 38 U.S.C § 7292.

*Hudick v. Wilkie*, 755 F. App'x 998 (Fed. Cir. 2018).

The VA argues that Pub.L. 116-23 authorizes a stay of claims prior to its

effective date of January 1, 2020. Appx56. This erroneous opinion causes harm to

the individual Petitioners as well as the corporate Petitioners who assist Blue Water

Navy veterans with their claims. Accordingly, Petitioners have proper standing to

challenge the VA action. Additionally, the stay is just not authorized by law.

The VA may attempt to argue that the stay constitutes a procedural action, or

a general statement of policy and therefore outside the scope of judicial review,

however simply labeling an action "procedural" does not make it so. The most

important factor in distinguishing substantive rules from general statements of

policy (procedural) concerns the legal effects of the agency action in question on

regulated entities. *DAV v. Sec'y of Veterans Affairs*, 859 F.3d 1072, (Fed. Cir.

2917). . Unlike the case in *DAV*, the Board of Veterans' Appeals is bound by the

language of the stay, Appx01, and by all regulations of the Department,

instructions of the Secretary, and the precedent opinions of the chief legal officer

of the Department." 38 U.S.C. § 7104©. Since this stay is an interpretation of

statutory authority, which has legal effects on the regulated parties, and there is no other adequate remedy, it is susceptible to judicial review by this Court.

The Agent Orange Act mandates that the VA presume that a Vietnam veteran's disability is service connected if the veteran has an eligible disease and "served in the Republic of Vietnam" during the specified time period. 38 U.S.C. § 1116(a)(1). In January, this court sent a strong message to the Secretary, in a 9-2 decision in *Procopio v. Wilkie*, 913 F.3d 1371, 1380-81 (Fed. Cir. 2019), that the VA erred in denying benefits to Blue Water Navy (BWN) Vietnam veterans. The *Procopio* court concluded that the phrase "served in the Republic of Vietnam" included Vietnam's territorial sea.[6]

Following this monumental decision, Congress attempted to expand the *Procopio* decision in the Blue Water Navy Vietnam Veterans Act of 2019 (H.R. 299) (Pub.L. 116-23). "With one unanimous vote Congress declared that it's time to provide these veterans, and their families with the benefits they have been denied for too long." Appx40. In doing so, they did not amend 38 U,S.C. §1116 or legislatively overrule *Procopio*. Congress agrees. Appx43-45, Appx58-59.

---

6 Vietnam uses the straight baseline method of computing their territorial sea, authorized by the Convention on the Territorial Sea and Contiguous Zone, [1958] 15 U.S.T. 1607, T.I.A.S. No. 5639 Appx11-14 and the United Nations Convention on the Law of the Sea, 1833 U.N.T.S. 397 (Dec. 10, 1982, *entered into force on* Nov. 16, 1994) Appx15-19. Consequently, the territorial sea is 12 nautical miles from the baseline as depicted in Appx06.

When Congress enacted Pub. L. 116-23, they could have included language necessary for the Secretary to implement provisions of the Act immediately, or to legislatively overrule *Procopio*, but they chose not to do so. Instead they added a separate section, § 1116A, which unambiguously stated that the authority granted by the Act shall not be effective until January 1, 2020. *See* § 3(g) of Pub.L. 116-23. Therefore, Secretary Wilkie's July 1, 2019, stay of pending claims for benefits affected by the Act is not authorized and should be vacated by this Court. The Secretary will be free to impose his stay on pending claims submitted under the Act after January 1, 2020.

Even if this Court determines that there is ambiguity regarding the timing of the Secretary's stay authority, the pro-claimant canon of statutory construction requires that any doubt be resolved in favor of the veteran. *Henderson ex rel. Henderson v. Shinseki* 561 U.S. 428, 441, 131 S.Ct. 1197, 1206 (2011), Both *Auer* and *Chevron* deference are subject to accepted canons of statutory construction. *See, Kisor v. Wilkie*, 139 S. Ct. 2400, 2446 (2019).and *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

The legislative history and the plain-text interpretation both unambiguously confirm that Congress intended to not only to extend the presumption of service connection for diseases associated with exposure to herbicide agents, but to do so

14

in a timely and efficient manner.  An arbitrary decision to stay claims for benefits prior to the effective date is obviously not the most veteran-friendly  interpretation.

The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. *Lamb v. Principi*, 284 F.3d 1378 (Fed. Cir. 2002).  These are precisely the claims that will be affected by the stay.  This is especially true in the case of Petitioner Procopio whose claim for benefits, previously granted by this Court, as well as additional benefits remanded by the Veterans Court, are now stayed.

BWN veterans' claims have been denied and delayed for 17 years. Now they are running out of time.  An estimated 523 BWN veterans die every day, they deserve closure and peace of mind.  This Court should stand by these veterans and vacate the July 1, 2019 stay as untimely until the effective date of January 1, 2020.

The ruling in *Procopio* addresses claims for benefits brought under 38 U.S.C. § 1116 for service in the Republic of Vietnam, to include the territorial sea. By its very language, the Act does not amend or repeal § 1116.  Nor does It legislatively overrule *Procopio*.  Section 2(a) of the Act states "In general.—Chapter 11 of title 38, United States Code, is amended by inserting after

section 1116 the following new section".  In other words, Congress merely added another section without affecting the previous section interpreted by this Court.

The July 1, 2019 stay memorandum does not differentiate between claims filed under §1116 and *Procopio* and claims filed under the new §1116A.  Internal VA documents, however, show that they believe the stay controls over Procopio.  Appx04.  This was confirmed by the Secretary's response.  Appx56.  Moreover, the stay brought to a halt claims already being processed under *Procopio*.  Appx56.  Without this Court's intervention, the Veterans Benefits Administration and the Board of Veterans' Appeals will apply the stay to all Blue Water Navy claims, including those authorized by *Procopio*.

Extending the stay authority to *Procopio* claims contravenes the plain and obvious intent of Congress.  Congress and the VSOs agree.  Appx40-44, Appx58-62.  The Act added a new provision that addresses claims by veterans who served "offshore".  Congress could have used the term "territorial sea" in their legislation or could have repealed or amended § 1116. They chose not to do so. Instead they created another dubious area known as "offshore,"  which adds 360 square nautical miles to the territorial sea area recognized by *Procopio*.

Consequently, the stay provisions of the legislation, even if ripe, are not applicable to *Procopio* claims brought under § 1116 that are based on service in the territorial sea.  *Procopio* must be exempted to ensure veterans, such as Alfred

Procopio and the claims of the other Petitioners are not improperly delayed. Accordingly, the Court should vacate the stay as applied to claims for benefits brought under § 1116 and *Procopio*.

5 U.S.C.A. § 706(2)(A) authorizes this Court to reverse an agency decision as arbitrary and capricious if the agency, *inter alia*, relied on factors Congress did not intend or entirely failed to consider an important aspect of the problem. Additionally, an "agency abuses its discretion when it fails to provide a reasoned explanation for its actions." *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir.2005). *See also Tapis Int'l v. INS*, 94 F.Supp.2d 172, 174 (D.Mass.2000) (citing *Shanti, Inc. v. Reno*, 36 F.Supp.2d 1151, 1162 (D.Minn.1999)). Here, Secretary Wilkie provided no explanation for his decision to further delay claims that may be affected by the Act. Instead he stated simply and erroneously, that the Act authorized him to do so, and he decided to exercise that authority. Here, the Secretary failed to consider the most important aspect of the problem: BWN veterans, who have been denied and delayed by the VA for 17 years are dying, many of them due to the conditions caused by herbicide exposure. A stay of claims, of any duration, without a reasoned explanation is not only arbitrary and capricious, it is unjust. This is especially true because a phased implementation with little or no additional burden on the VA could be implemented, using methods presented to the VA by MVA. Appx20-26, Appx48-51, Appx53-55. Prior to the

17

stay, the VA had begun a partial implementation of *Procopio*. Appx27-30. The VA admits that some claims had already been adjudicated. Appx04. In the alternative this Court should vacate the stay of claims issued by Secretary Wilkie on July 1, 2020, as an abuse of discretion.

## Standard of Review

The Court's scope of review with respect to this § 502 petition is found in 5 U.S.C. § 706 of the APA, which requires the Court to "decide all relevant questions of law, . . . and determine the meaning or applicability of the terms of an agency action." Further, this Court will "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

As a general matter, this Court reviews issues of law under a *de novo* standard of review. *See, e.g., Winsett v. Principi*, 341 F.3d 1329, 1330 (Fed. Cir. 2003). Also, as a general matter an agency's interpretation of its own regulations is entitled to substantial deference from the Court. *See, e.g., Reizenstein v. Shinseki*, 583 F.3d 1331, 1335 (Fed. Cir. 2009). However, such deference is not owed if the agency's interpretation is "plainly erroneous or inconsistent with the regulation" or the interpretation does "not reflect the agency's fair and considered judgment on the matter in question." *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997) (internal citations omitted). In determining whether *Auer* deference

18

is proper, however, the court must first determine if the text is unclear, and if ambiguous, to "turn to other canons of interpretation" and tie-breaking rules to resolve the ambiguity. *Kisor v. Wilkie*, 139 S. Ct. at 2446.

In interpreting statutes, a court must apply a similar analysis. The Supreme Court has recently spoken out on this very issue. In *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018), the Supreme Court held that canons of construction should be applied at the first step of the *Chevron* [v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)]. Speaking for the majority Justice Gorsuch said as follows:

> Finally, the *Chevron* Court explained that deference is not due unless a "court, employing traditional tools of statutory construction," is left with an unresolved ambiguity. 467 U.S., at 843, n. 9, 104 S.Ct. 2778. And that too is missing: the canon against reading conflicts into statutes is a traditional tool of statutory construction and it, along with the other traditional canons we have discussed, is more than up to the job of solving today's interpretive puzzle. Where, as here, the canons supply an answer, "*Chevron* leaves the stage." *Alternative Entertainment,* 858 F.3d, at 417 (opinion of Sutton, J.).

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630, 200 L. Ed. 2d 889 (2018)

The pro-claimant or pro-veteran canon has been recognized as an accepted canon of statutory construction. A unanimous Supreme Court re-affirmed "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *Henderson ex rel. Henderson v. Shinseki* 561

19

U.S. 428, 441, 131 S.Ct. 1197, 1206 (2011).  The Federal Circuit has also

recognized the paternalistic non-adversarial intent of the system designed by

Congress.  *Gambill v. Shinseki*, 576 F.3d 1307, 1317 (Fed. Cir.2009).  The *Gambill*

court  described the process as  uniquely pro-claimant." *Id*. at 1316. Applying the

holding of *Epic*, and *Kisor*, this canon of construction should be  used during the

initial step in both *Auer* and *Chevron* analysis.

This Court holds unlawful and sets aside agency actions, findings, and

conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law 5 U.S.C.A. § 706(2)(A).  Under the arbitrary and

capricious standard of review, a court must determine if the administrative agency

decision was made after considering the relevant factors and whether the agency

made a clear error in judgment. 5 U.S.C.A. § 706(2)(A).

**Argument**

I.       **This Court has Jurisdiction to Review Secretary Wilkie's July 1, 2019 memorandum, ordering the stay of claims, with legal effects outside of the agency, and as such is entitled to judicial review under 5 U.S.C. §§ 502, 553 and 552(a)(1)(D).**

Administrative agency actions are presumed to be reviewable under the

Administrative Procedure Act (APA), which provides that final agency action for

which there is no other adequate remedy in a court is subject to judicial review. 2

Fed. Proc., L. Ed. § 2:263.  The provision authorizing judicial review of the VA

Secretary's actions can be found at 38 U.S.C. §502, which grants this Court

jurisdiction over items to wicj 5 U.S.C. §§ 552(a)(1) and 553 apply.  In this case

there are both.

Petitioners contend that the stay and the Secretary's memorandum are

substantive rules to which the notice and comment requirements of § 553 apply.  In

the alternative,  even if this is a  policy statement, it is still covered by both (1)

552(a)(1)(D)'s reference to "statements of general policy or interpretations of

general applicability formulated and adopted by the agency"; and (2) 553(b)(A)

and (d)(2)'s's references to "interpretative rules" and "statements of policy."

Pursuant to the APA, 5 U.S.C. § 553, agencies are required to publish

proposed rules in the Federal Register to provide both notices to interested parties

and an opportunity to comment prior to implementing those rules. Section 553(a)

of the APA excludes matters related to benefits from this requirement; however,

38 U.S.C. § 501(d) specifically provides that this "benefits" exception does not

apply to rules and regulations promulgated by the Respondent. *See Haas v. Peake,*

525 F.3d at 1195 (overruled on other grounds). Therefore, a rule enacted by VA,

such as the stay challenged in this Petition, is subject to the notice and comment

requirements of the APA.

The Freedom of Information Act requires "statements of general policy . . .

formulated and adopted by the agency" to be "currently publish[ed] in the Federal

Register for the guidance of the public." 5 U.S.C. § 552(a)(1)(D). *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 349, 99 S. Ct. 2800, 2806 (1979). This includes agency opinions, policy statements not previously published in the Federal Register. 5 U.S.C. § 552(a)(2). *See, American Mail Line v. Gulick*, 411 F.2d 696, 701 (D.C. Cir.1969). In the instant case, the stay provision was a substantive rule of general policy and an agency opinion and policy statement not previously published in the Federal Register.

The notice and comment requirement apply only to substantive or legislative rules, and specifically does not apply to rules which are "non-legislative" in nature; i.e., interpretive or procedural. This Court has previously found that substantive rules are "legislative" in nature such that they "effect a change in existing law or policy . . . or affect individual rights and obligations." *Guerra v. Shinseki*, 642 F.3d 1046, 1051 (Fed. Cir. 2011); *Haas* 525 F.3d at 1195.

Interpretive rules, in contrast, merely "advise the public of the agency's construction of the statutes and rules which it administers" and do not "attempt to make new law or modify existing law." *See Guerra*, 642 F.3d at 105, citing *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995), quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979); *see also Paralyzed Veterans of America v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998) (quoting *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C. Cir. 1993) (holding that "[A]n interpretative

statement simply indicates an agency's reading of a statute or a rule. It does not

intend to create new rights or duties, but only reminds affected parties of existing

duties.").

A policy statement "explains how the agency will enforce a statute or

regulation—in other words, how it will exercise its broad enforcement discretion

or permitting discretion under some extant statute or rule." *Nat'l Mining Ass'n v.*

*McCarthy,* 758 F.3d 243, 252 (D.C.Cir. 2014). It serves to "appris[e] the regulated

community of the agency's intentions as well as informing the exercise of

discretion by agents and officers in the field." *Cmty. Nutrition Inst. v. Young,* 818

F.2d 943, 949 (D.C. Cir.1987); *Ass'n of Flight Attendants CWA, AFL-CIO v.*

*Huerta*, 785 F.3d 710, 716 (D.C. Cir. 2015).

Consequently, since this policy statement was never published in the Federal

Register the Court should invalidate it against any person who lacks actual

knowledge. This Court has specifically noted that the title of the document

containing a specific provision is not relevant to the inquiry as to whether the

provision is substantive or interpretive. For instance, this Court has found that

provisions of the VA's Veterans Benefits Manual M21-1 can constitute substantive

rules for purposes of the APA. *See Guerra*, 642 F.3d at 1055, n.2, citing *Earle v.*

*Brown, 6Vet. App. 558, 562 (1994); Hayes v. Brown*, 5 Vet. App. 60, 67 (1993);

*Fugere v Derwinski,* 1 Vet. App. 103 (1990), *aff'd*, 972 F.2d 331 (Fed. Cir. 1992).

In the instant case, the Respondent's stay clearly effects a change in existing law or policy which does affect the individual rights of numerous veterans including the individual Petitioners and members and subscribers of the corporate Petitioners. The stay provision, as confirmed by the VBA email, overturns the mandate of this Court issued on March 22 by inserting an illegal and unauthorized stay. It further rescinds the interim guidance provided by the VA's own Office of General Counsel to initially cover those in the harbors and within 12 nautical miles of shore. Appx27-30.

Additionally, the stay denies these veterans substantive rights to which they were previously entitled. When a new rule affects the substantive rights of veterans and effects a change in existing law or policy, the APA requires that it be published in the Federal Register giving affected parties an opportunity to comment on it. The Respondent's failure to comply with the requirements of the APA warrants this Court's action to invalidate the Final Rule on this basis alone. *See Nat'l Org. of Veterans' Advocates, Inc v. Secretary of Veterans Affairs*, 260 F.3d 1365, 1375 (Fed. Cir. 2016) (holding that "[f]ailure to allow notice and comment, where required, is grounds for invalidating the rule"), citing *e.g., Auer v. Robbins*, 519 U.S. at 459; *ChryslerCorp. v. Brown*, 441 U.S. at 313.

The VA may attempt to argue that the stay constitutes a procedural action, or a general statement of policy and therefore outside the scope of judicial review,

however simply labeling an action "procedural" does not make it so.  The VA will inevitably contend that this action is precluded from judicial review by the ruling in *Hudick v. Wilkie*, 755 F. App'x 998 (Fed. Cir. 2018).  This contention is without merit however, as *Hudick,* like *DAV, supra.,* involved a provision of the M21 Manual, which is not generally considered binding on veterans or the Board itself falling within § 552(a)(2)—not § 552(a)(1).  Here the Secretary has specifically bound the Board of Veterans Appeals to the stay. Appx04.  Accordingly, it comes under § 552(a)(1).

But even some "interpretive" rules have been sufficient to vest jurisdiction in this Court.  Within the Federal Circuit, pre-*DAV/Hudwick* jurisprudence also allowed judicial review of interpretive manuals and even a General Counsel's opinion.  *Snyder v. Secretary of Veterans Affairs*, 858 F.3d 1410, 1413 (Fed. Cir. 2017).  The same holds true for a letter addressing the procedures for benefit awards, because, as in this case, it affected substantive as well as procedural rights. *Military Order of the Purple Heart supra.*, 580 F.3d at 1296.  *See, also*, *Animal Legal Def.Fund v. Quigg*, 932 F.2d 920, 927 (Fed. Cir. 1991).

The actions here are quickly and easily distinguished from *DAV/Hudwick*. "[T]he question of whether a particular provision is substantive or interpretative for purposes of the APA is not resolved simply by the title of the document in which the provision is found." *Guerra*, 642 F.3d at 1051 n.2. Instead, the ultimate focus

25

of the inquiry is whether the agency action shares the fundamental characteristic of a regulation, i.e., that it has the force of law. *Id.* Additionally, the Court in *DAV v. Sec'y of Veterans Affairs* concluded that the most important factor in distinguishing substantive rules from general statements of policy (procedural), concerns the legal effects of the agency action on the regulated entities. *DAV*, *supra.* 859 F.3d at 1077.

Paragraph two of the July 1, 2020 memorandum, orders the Veterans Benefits Administration (VBA) and the Board of Veterans Appeals (Board) to stay all decisions for disability compensation based on service in the offshore waters of the Republic of Vietnam between January 9, 1962, and May 7, 1975, resulting from at least one of the diseases listed in 38 C.F.R. § 3.309(e). *See* Appx01-03. The Board is bound by "regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department." 38 U.S.C. § 7104©. The VBA and the Secretary have interpreted this to include *Procopio* claims. Appx04, Appx56-57. Therefore, any attempt by the VA to claim this stay does not constitute a final agency action are moot as a result of the legal effects this memorandum has on interested parties. Consequently, all Blue Water Navy veterans are affected, whether they filed under the Act, *Procopio* or pre-*Procopio* law.[7]

---

7 Prior to *Procopio*, veterans who were on a ship listed on an approved "VA ships list" were eligible for the presumption. These ships operated on the

Judicial review of an agency action is limited to relevant questions of law, including interpreting constitutional and statutory provisions. 38 U.S.C § 7292. *Hudick v. Wilkie*, 755 F. Appx 998 (Fed. Cir. 2018). Additionally, 5 U.S.C. 552(a)(1)(D) authorizes judicial review for agency actions that include substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency. Here, the VA's interpretation that Pub.L. 116-23 authorizes a stay of *Procopio* claims prior to the effective date of January 1, 2020, is the issue to be decided, and as such, falls squarely within this Court's jurisdiction and is entitled to judicial review.

**II. The Blue Water Navy Vietnam Veterans Act of 2019 (H.R. 299) (Pub.L. 116-23) Does Not Authorize the Secretary of the Department of Veterans Affairs to Issue a Stay of Claims for Benefits Filed under § 1116A Prior to the Statute's Effective Date of January 1, 2020.**

The plain language authorizing the Secretary to issue a stay, coupled with the plain language of the effective date, support the proposition that the Secretary does not have the authority to issue a stay of claims for benefits until the effective date of January 1, 2020, and even then only to claims filed under the Act and not *Procopio*.

---

internal rivers of Vietnam or were moored to a pier where the crew was allowed to debark.

**A.  Based on the Plain Meaning of § 3(g), Respondent Is Not Authorized to Issue a Stay Until the Effective Date of January 1, 2020.**

It is well settled that courts shall first look to the plain meaning of statutory language used when interpreting statutory or regulatory provisions.  As stated by this Court in *Procopio*: "In interpreting the regulation, we need not resort to international definitions of national sovereignty over waters adjacent to land or to the pro-veteran canon; we should simply read the plain language of the regulation".  913 F.3d 1381 (Louire, J concurring).  Additionally, "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .".  *Hibbs v. Winn*, 542 U.S. 88, 102, 124 S. Ct. 2276, 159 L. Ed. 2d 172 (2004).  The plain language of §1116A authorizing the Secretary to issue a stay, coupled with the plain language of the effective date, points to the same conclusion.  The Secretary does not have the authority to issue any stay of claims for benefits until the effective date of January 1, 2020.

Section 3(g), titled *Effective date*, plainly states "The amendments made by this section shall take effect on January 1, 2020".  *See* Pub.L. 116-23.  Nothing in § 3(c)(3), the amendment which authorizes a stay of certain claims, allows the Secretary to issue a stay prior to the effective date.  Rather, § 3(c)(3) authorizes the Secretary to stay a claim "until the date on which the Secretary commences the

28

implementation of such section 1116A". *Id.* This language was necessary to compliment the language used in § 3(c)(1), which authorizes the Secretary to "issue guidance to implement section 1116A of title 38, United States Code, as added by subsection (a), before prescribing new regulations under such section". *Id.* Although Congress could have easily added language to authorize a stay upon enactment, and prior to the effective date, they deliberately chose not to.

The plain meaning of § 2(B)(I) reinforces this contention; "An individual described in this subparagraph is a veteran, or a survivor of a veteran, who…submitted a claim for disability compensation on or after September 25, 1985, and before January 1, 2020". *See* Pub.L 116-23. This further signifies Congress' intent that claims for benefits would continue to be processed and properly adjudicated by the current laws until the effective date of the Act.

Here, the court should apply the canon of statutory construction *in pari materia*. It is well settled that individual sections of a single statute should be construed together. *Erlenbaugh v. United States*, 409 U.S. 239, 244, 93 S. Ct. 477, 480, 34 L. Ed. 2d 446 (1972). This canon of construction is used to give effect to both subsections.

In the first paragraph of Secretary Wilkie's July 1st memo, the Secretary erroneously claimed the Act "authorizes me to stay certain pending claims for benefits that may be affected by that Act until implementation of the statutory

amendments Congress directed to go into effect on January 1, 2020". Appx01. He takes the same approach in his response to MVA. Appx56. The Secretary seems to be confusing the enactment date with the effective date. This interpretation is arbitrary and capricious and is in direct opposition to the plain language of the statutory authority. As such, this Court is not obligated to grant deference to the agency's interpretation of the Act or any of the provisions within. "We are not obligated to give an agency deference when the regulation is not ambiguous, *see Christensen*, 529 U.S. at 588, or when an "alternative reading is compelled by the regulation's plain language,". *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (1994) (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430, 108 S. Ct. 1306, 99 L. Ed. 2d 515 (1988). Instead, the court should read both provisions as one allowing the Secretary to issue stays brought under the Act that were pending at the date of enactment, but not until January 1, 2020.

The Secretary seems to cherry pick items from the Legislative History and take them out of context to support his position that the Act control cases brought under *Procopio*. Appx56. His analysis fails because § 1116A does not conflict with § 1116. It provides coverage for a geographic area which overlaps the territorial sea, but does nothing to eliminate the territorial sea as an area to be covered. If anything, it merely supplements it. Nor, by its language, does it

explicitly or implicitly legislatively overrule *Procopio*.

The Secretary relies heavily upon a fleeting phrase "notwithstanding any other provision of law," which he articulates is the Section 1116A(d). His argument might be stronger if he read the next phrase. The full reading of the provision is:

> Notwithstanding any other provision of law, for purposes of this section, the Secretary shall treat a location as being offshore of Vietnam if the location is not more than 12 nautical miles seaward of a line commencing on the southwestern demarcation line of the waters of Vietnam and Cambodia and intersecting the following points:

The plain language of the statute limits the "Notwithstanding" phrase to that section, § 1116A. Nothing in that provision speaks to § 1116. Additionally, this subsection refers to "offshore" and not the territorial sea as determined by *Procopio*. What the Secretary appears to be referring to is § 3( c)(1) of Pub.L 116-23 codified as a note to 38 U.S.C. § 1116A. Yet even here the Secretary's analysis fails. This provision reads:

> (1) GUIDANCE.—Notwithstanding section 501 of such title, the Secretary of Veterans Affairs may issue guidance to implement section 1116A of title 38, United States Code, as added by subsection (a), before prescribing new regulations under such section

PL 116-23, June 25, 2019, 133 Stat 966 § 3( c)(1). Here the Secretary 's authority, by the plain language of the provision, applies solely to § 1116A.

Additionally the provision does not refer to "notwithstanding any other provision

of law," as argued by the Secretary.  Instead it refers only to § 501 which addresses his authority to issue regulations.

The intent of Congress is further underscored by the correspondence from Chairman Taknao and several Senators emphasizing that the stay provisions were not intended to affect *Procopio* claims.  Appx40-42, Appx58-59.

In analyzing the effective date of the statute, this Court should first determine if Congress decided which cases would be applicable under the new law.  The wording of the statute is clear and the court's task here is to follow the wording.  *Lindh v. Murphy,* 96 F.3d 856, 861 (7th Cir.1996) (en banc) (quoting *Landgraf v. USI Film Prod.,* 511 U.S. 244, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994)), *cert. granted,* 519 U.S. 1074, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997).  As mentioned *supra*, § 3(g) makes clear that all provisions of the Act, including the authority to issue a stay of claims, shall not take effect until January 1, 2020. Accordingly, this court has but one recourse, follow the statute and ensure the Secretary does so as well.

Further, the decision in *Soc'y Nat. Bank of The Miami Valley v Haynes*, clarified that "the vesting of property rights should not be affected by enactment of a statute to be effective in the future. The Court further finds that even actual notice of a statute's enactment cannot alter the existence or substantiality of a vested property right of a type which the statute's future enforcement may impair". 18

B.R. 582, 583 (Bankr. S.D. Ohio 1982). Here, each veteran affected by the stay is being improperly denied their earned property rights, again.

It is well settled that veterans have a property interest in their applications for benefits that is protected by the Fifth Amendment's Due Process Clause because their benefits are nondiscretionary and mandated by statute. *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009).

These claims for benefits are not handouts, rather they were earned through selfless service to their country. In return for that sacrifice, their claims for benefits have been repeatedly denied and delayed by the one agency, the Department of Veterans Affairs (VA), that should be focused on assisting and mitigating the damage caused by their own government's actions. Secretary Wilkie's untimely and unlawful stay is yet another disconcerting example of the VA choosing politics and delay tactics over the veterans they are required to serve. BWN veterans are dying daily! Any delay in processing and granting these veterans their earned benefits could be too long for Mr. Harper and other dying veterans.

**B. Even If the Court Decides the Language Authorizing the Stay Prior to the Effective Date is Ambiguous, the Pro-Claimant Canon of Statutory Construction Requires It be Construed in the Most Veteran-Friendly Manner.**

In reviewing an agency's construction of a statute, this Court must first

determine whether "the intent of Congress is clear." *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842 (1984). If it is, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43.

Determining whether ambiguity exists, however, requires more than examining the statutory text in isolation. As the Supreme Court has recently reemphasized, "under *Chevron*, we owe an agency's interpretation of the law no deference unless, after employing traditional tools of statutory construction, we find ourselves unable to discern Congress's meaning." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) (quotation marks omitted). These "traditional tools" include the statutory text, context, legislative history, and canons of construction. *See Gazelle v. Shulkin*, 868 F.3d 1006, 1010 (Fed. Cir. 2017); *Kyocera Solar, Inc. v. ITC*, 844 F.3d 1334, 1338 (Fed. Cir. 2016).

Many canons of construction incorporate settled understandings of how Congress drafts statutes. The Supreme Court has repeatedly applied such canons at *Chevron* Step One. Most notably, in *Epic Systems Corp. v. Lewis*, the Court provided a capsule view of how these canons of construction should be reconciled with *Chevron*. 138 S. Ct. 1612 (2018). In that case, the Court consulted, among other things, the canon against reading conflicts into two applicable statutes, which incorporates the "strong presumption that repeals by implication are disfavored and

that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." *Id.* at 1624, 1630 (quotation marks and brackets omitted).

Using these canons to judge whether ambiguity exists makes good sense. As the Supreme Court and this Court have repeatedly recognized, "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Gardner*, 513 U.S. at 118; *accord, e.g.*, *Click-To-Call Techs., LP v. Ingenio, Inc.*, 899 F.3d 1321, 1329-30 (Fed. Cir. 2018); *Starry Assocs., Inc. v. United States*, 892 F.3d 1372, 1378 (Fed. Cir. 2018); *Kirkendall*, 479 F.3d at 845 (plurality op.); *see also Brown & Williamson*, 529 U.S. at 132 ("The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.").

If this Court decides there is ambiguity concerning Secretarial authority to issue a stay prior to the effective date, application of the accepted pro-claimant canon of construction should resolve the ambiguity in favor of veterans. See, *Kisor v. Wilkie*, 139 S. Ct. at 2446. An arbitrary decision to stay claims for benefits prior to the effective date is not a veteran-friendly manner of interpretation, especially as it applies to Mr. Harper. As Senator Gillibrand noted in her July 15th letter to Secretary Wilkie; "[T]he VA has already identified this population once in order to deny the claims. There is nothing left to do besides processing the claims". *See* Appx40. Senator Gillibrand also pointedly notes also that "Delaying these benefits

for another six months without specific and valid cause only adds insult to these veterans, many of whom have been waiting for these benefits for seventeen years". *Id.* Petitioners agree.

Vietnam veterans, including these Blue Water Navy veterans, are dying at a high rate every single day. They deserve the peace of mind and sense of closure that their families will be taken care of. These are benefits they earned through selfless service to their nation. They are fair compensation for toxic exposure while in the service of their government, The North Vietnamese never sprayed Agent Orange. Not one drop. The disabilities were caused by our own government, who would now delay their long overdue compensation,

Mr. Procopio should certainly be granted his benefits because this court ordered the VA to do so back in January. Mr. Harper will probably not survive the stay. Mr. Yates and Mr. Kvintus, and the members of the BWNVVA and those who subscribe to MVA are growing older. In Mr. Yates' case, he must work full time to pay his medical co-pays to treat his ailments, caused by exposure to herbicides, that have not been covered by the VA. https://popularmilitary.com/vietnam-veterans-hoping-a-new-law-will-finally-allow-them-to-get-compensated-for-agent-orange-exposure/ All are eligible under *Procopio*. All have had their claims stayed by the Secretary.

The pro-claimant or pro-veteran canon has been repeatedly recognized as an

accepted canon of statutory construction. A unanimous Supreme Court re-affirmed

"the canon that provisions for benefits to members of the Armed Services are to be

construed in the beneficiaries' favor." *Henderson ex rel. Henderson v. Shinseki* 561

U.S. 428, 441, 131 S.Ct. 1197, 1206 (2011). The Federal Circuit has also

recognized the paternalistic, non-adversarial intent of the system designed by

Congress. *Gambill v. Shinseki*, 576 F.3d 1307, 1317 (Fed. Cir.2009). The *Gambill*

court described the process as uniquely pro-claimant." *Id*. at 1316.

As recently as last year, Judge O'Malley argued in dissent that there is little

logic in deferring to agency regulations "promulgated pursuant to statutory

schemes that are to be applied liberally for the very benefit of those regulated."

*Kisor v. Shulkin*, 880 F.3d 1378, 1379 (Fed. Cir. 2018) (O'Malley, J dissenting).

*See also*, *Procopio v. Wilkie*, 913 F.3d 1371, 1382 (Fed. Cir. 2019) (O'Malley, J.

Concurring). While not specifically addressing the pro-claimant canon, the

Supreme Court in *Kisor* confirmed that *Auer* deference must yield to canons of

statutory construction. *Kisor v. Wilkie*, 139 S. Ct. at 2415 (before concluding that a

rule is genuinely ambiguous, a court must exhaust all the "traditional tools" of

construction).

Since the days of World War II, the United States, has properly recognized

that "legislation is to be liberally construed for the benefit of those who left private

life to serve their country in its hour of great need." *Fishgold* v. *Sullivan Drydock*

37

*& Repair Corp.*, 328 U.S. 275, 285 (1946) (citing *Boone v. Lightner*, 319 U.S. 561, 565 (1943). Military veterans have "been obliged to drop their own affairs and take up the burdens of the nation" (*Boone*, 319 U.S. at 575), "subjecting themselves to the mental and physical hazards as well as the economic and family detriments which are peculiar to military service." (*Johnson* v. *Robison*, 415 U.S. 361, 380 (1974)).

Arguably, this sentiment applies to BWN veterans more than any other group of veterans in American history. These veterans represent a generation who were involuntarily drafted into an unpopular conflict to return home to an ungrateful nation. Some of these veterans even endured physical assaults upon their return, simply for answering their nations call. Then as they began to develop service-connected disabilities the VA ruled, without justification, that they were ineligible to benefits freely granted to their onshore and Brown Water brothers. BWN veterans deserve better! Any review of the Secretary's stay and his interpretation of the Act requires the application of this unique pro-claimant, pro-veteran canon of construction. This canon requires this Court to resolve any internal inconsistencies in the Act in favor of providing benefits to veterans.

### III. Pub.L 116-23 Does Not Authorize the Secretary of the Department of Veterans Affairs to Issue a Stay of Claims for Benefits Filed Under § 1116 and/or *Procopio v. Wilkie*, 913 F.3d 1371, 1380-81 (Fed. Cir. 2019).

It is well settled that when Congress passes a new statute, it acts aware of all previous statutes on the same subject. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1383 (Fed. Cir. 1983). *See also, Erienbaugh, supra.*, 409 U.S. at 244. This jurisprudence is on point with the situation in the instant case. Notably there was no explicit or implicit repeal of the existing statute.

The ruling in *Procopio* addresses claims for benefits filed under 38 U.S.C. § 1116 and covers claims of veterans who served in the territorial sea. By its very language, the Act does not repeal § 1116. Section 2(a) of the Act states "In general.—Chapter 11 of title 38, United States Code, is amended by inserting after section 1116 the following new section". The Secretary's July 1 memo does not differentiate between the §1116 and §1116A. Instead the memo orders the stay of claims that "may be affected by the Act". *See* Appx. 01. Without clarification it is likely that the Veterans Benefits Administration and the Board of Veterans' Appeals will interpret the stay as precluding all claims related to agent orange exposure, including those authorized by *Procopio* and/or properly filed under § 1116.

This concern was substantiated in an email received from the VBA St. Louis, *See* Appx04, which contains an internal Question and Answer segment, designed for VA employees to address the implementation of Pub.L. 116-23. In answering whether the stay conflicts with *Procopio*, the position of the VA was

"No. The Blue Water Navy Vietnam Veterans Act governs implementation of the *Procopio v. Wilkie* decision". *Id.* This is inaccurate but unfortunately, reflects the opinion of the Secretary. Appx56-57. This policy flies in the face of Congressional intent, Appx40-42, Appx58-59, and the understanding of the various Veterans Service Organizations. Appx43-44, Appx60-62.

This alarming dissemination of inaccurate information continued when asked about claims processed prior to the stay, to which the response was, in relevant part: "Any Board grant of benefits under *Procopio* dated prior to July 1, 2019 will be effectuated by VBA". *Id.* Based on this information, Alfred Procopio himself will be unlawfully affected by the Secretary's stay, as the Court of Appeals for Veterans Claims did not remand Mr. Procopio's case to the Board on July 9, 2019. *See* Appx. 45-47. The stay, if not rescinded, must be clarified to ensure claims filed under *Procopio* and §1116 are not affected. The current language makes it obvious that the Secretary has chosen to ignore this Court's mandate in *Procopio*.

In addition to Pub.L 116-23 creating a new section within Chapter 11 of title 38 of the U.S.C., the Act also created a new area of presumption by using the term "offshore" to define the geographic points listed in § (d) of the Act. *Procopio* properly concluded that veterans who entered the territorial sea of Vietnam were included in the term "served in the Republic of Vietnam." under 38 U.S.C. §

1116(a). "Congress has spoken directly to the question of whether those who served in the 12 nautical mile territorial sea of the "Republic of Vietnam" are entitled to section 1116's presumption if they meet the section's other requirements. They are. Because "the intent of Congress is clear, that is the end of the matter." *Procopio v. Wilkie*, 913 F.3d 1371, 1380-81 (Fed. Cir. 2019) (citations omitted).

Congress could have codified *Procopio* by using the term "territorial sea", Or they could have repealed § 1116.  They chose not to do so. Instead they decided to take no action as to §1116.  Accordingly, the stay provisions of the legislation, even if ripe, are not applicable to claims brought under § 1116 and/or based on service in the territorial sea as defined by *Procopio*.  This must be clarified.

Additionally, prior to *Procopio*, the VA approved some veterans serving on Blue Water Navy ships that entered the inland rivers or tied up to a pier when they were granted the presumption of exposure. *Gray v. McDonald*, 27 Vet. App. 313, 327 (2015). The stay memo is unclear as to whether it applies to ships on the "ships list."  The July 1, 2019 version does not include any of the ships during the period of service by the named Petitioners.  It does continue to deny coverage to all of the veterans who served in the bays and harbors and the territorial sea. https://**www.benefits.va.go**v/compensation/docs/**shiplist**.docx.

VA's awareness that they must abide by the ruling in *Procopio* is confirmed by representations made to the Supreme Court by the Solicitor General in their

June 4, 2019 Motion to Dismiss in the case of *Gray v. Wilkie*, 17-1679 at 1. In that

pleading the Solicitor General declared: "[T]he Department of Veterans Affairs

(VA) will follow *Procopio's* interpretation of the [Agent Orange] Act going

forward". https://www.supremecourt.gov/DocketPDF/17/17-1679/101982/
20190604153719214_17- 1679bsUnitedStates%20Mot%20to%20Dismiss.pdf

The distinction between claims brought under the Act and claims brought

under *Procopio* and/or §1116 must be addressed by The Secretary to ensure

veterans, such as Alfred Procopio himself, are not improperly affected by the stay.

### IV. The stay of claims for benefits, issued on July 1, 2019, even if ripe, is an abuse of discretion by the VA.

A reviewing court must evaluate whether the agency abused its discretion by

determining whether the agency action was based on the consideration of all

relevant factors and whether there was a clear error of judgment. *Motor Vehicles*

*Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

(1983). Additionally, there must an articulation of an explanation for its decision

that rationally connects the facts and the decision. *Id*. The standard to determine

whether an action is arbitrary and capricious, was announced in *Milena Ship*

*Management Company v. R. Richard Newcomb*, 995 F.2d 620 (5th Cir. 1993). The

*Milena Ship* court held that the decision must be reviewed to determine whether

the action of the decision maker was within its authority, adequately considered all

relevant factors and provided a reasoned basis for its decision. *Id*. at 623.

The Administrative Procedures Act authorizes courts to reverse an agency decision as arbitrary and capricious if the agency, *inter alia*, relied on factors Congress did not intend or entirely failed to consider an important aspect of the problem. 5 U.S.C.A. § 706(2)(A). *Rahman v. Napolitano*, 814 F. Supp. 2d 1098 (W.D. Wash. 2011).

Additionally, an "agency abuses its discretion when it fails to provide a reasoned explanation for its actions." *Movsisian v. Ashcroft,* 395 F.3d at1098 (9th Cir.2005) *See also Tapis Int'l v. INS,* 94 F.Supp.2d 172, 174 (D.Mass.2000) (citing *Shanti, Inc. v. Reno,* 36 F.Supp.2d at 1162.

As discussed *supra*., the Secretary exceeded his statutory and Constitutional authority by applying the stay provisions of § 1116A to claims submitted under § 1116. Administrative regulations having the force of law may be set aside if they exceed the statutory authority of the agency or are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law *Guardians Ass'n v. Civil Serv. Comm'n of City of New York*, 463 U.S. 582, 613, 103 S. Ct. 3221, 3238, 77 L. Ed. 2d 866 (1983) (O'Connor, J. concurring). Exceeding statutory authority is abuse of discretion p*er se.*

Additionally, the actions of the Secretary invoke the doctrine of separation of powers. It is well settled that all orders and judgments of courts must be

complied with promptly *Maness v. Meyers*, 419 U.S. 449, 458, 95 S. Ct. 584, 591, 42 L. Ed. 2d 574 (1975). An order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. *United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947). Congress might have had the authority to overrule *Procopio,* but Secretary Wilkie does not.

The Secretary petitioned the *Procopio* Court for a stay of mandate. After due consideration that Motion was denied. Now the Secretary has taken it upon himself to usurp the authority of this Court by imposing an illicit and unsanctioned stay of proceedings. The judicial system is a separate and equal branch of government and the Secretary does not possess the ability to flaunt duly authorized orders of this or any other Court. Yet by applying his stay to *Procopio* claims, that is what the Secretary has done.

Nor can it be said that the Secretary relied upon factors decided by Congress. Here Congressional intent that Procopio claims were not to be included in the stay is clear. Congress added a separate section rather than modifying or repealing § 1116. Senators have contacted the VA to confirm their intent. Appx40-42. The bill's sponsor and other members of the House Veterans Affairs Committee have also expressed their concerns. Appx58-59. Even the Vietnam Veterans of America, who supported the Act, told the Secretary that any stay

44

should not apply to *Procopio* claims  Appx43-44.   They have been joined by other VSOs.  Appx60-62.

Nor has Secretary Wilkie provided any explanation for his decision to unnecessarily delay claims that "may be affected by the Act". Appx01.  Instead, he stated simply, and erroneously, that the Act authorized him to issue the stay and that he decided to exercise that authority.  Appx56-57.  In doing so, the Secretary failed to consider the most important aspect of the problem here.  BWN veterans, who have been denied and delayed by the VA for 17 years are dying, many of them due to the conditions caused by the herbicide exposure.  Mr. Harper is one of many veterans in this unenviable position.  A stay of any duration, without a reasoned explanation, is not only arbitrary and capricious, it is unjust.

## Conclusion

For the reasons delineated herein, the Court should vacate the stay as untimely until the effective date of January 1, 2020.  In the alternative the Court should vacate the stay as applied to claims for benefits brought under § 1116 and *Procopio*.  Petitioner also requests the Court to award reasonable attorney's fees and costs associated with this action pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).

Respectfully Submitted:

Military-Veterans Advocacy

/s/ John B. Wells
   John B. Wells
LA Bar #23970
P. O. Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd. Suite 201D
Slidell, LA 70458 (physical)
Phone: (985) 641-1855
Email: JohnLawEsq@msn.com

## Certificate of Service

The undersigned certifies that the within was served on counsel for the

Secretary and the court via the CM/ECF filing system this 3rd day of August 2019.

/s/ John B. Wells
John B. Wells

# CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,837 words by computer word count, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a monospaced typeface using WordPerfect8.0 with 14-point proportionally spaced face.

/s/ John B. Wells
John B. Wells

Appendix

Secretary's Order

## Department of Veterans Affairs

# Memorandum

Date: JUL 01 2019

From: Secretary (00)

Subj: Stay of Pending Claims under the Blue Water Navy Vietnam Veterans Act of 2019 (H.R. 299)

To: Under Secretary for Benefits (20)
Chairman, Board of Veterans' Appeals (01)

1. The Blue Water Navy Vietnam Veterans Act of 2019 (BWNVV) authorizes me to stay certain pending claims for benefits that may be affected by that Act until implementation of the statutory amendments Congress directed to go into effect on January 1, 2020. I exercise that authority.

2. The Veterans Benefits Administration (VBA) and Board of Veterans' Appeals (Board) are ordered to stay decisions regarding claims for disability compensation that are based on service in the offshore waters of the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, and which claim disability resulting from at least one of the diseases listed in 38 C.F.R. § 3.309(e). *See* BWNVV at § 2(c)(3).

3. VBA and the Board are ordered to stay decisions regarding claims for disability compensation that are based on service in or near the Korean Demilitarized Zone, during the period beginning on September 1, 1967, and ending on August 31, 1971, and which claim disability resulting from at least one of the diseases listed in 38 C.F.R. § 3.309(e). *See* BWNVV at § 3(c)(3).

4. For purposes of this memorandum, the term "claims for disability compensation" shall include claims by the survivors of Veterans for benefits under chapter 13 of title 38, United States Code, that relate to the service and diseases identified in paragraphs 2 and 3.

5. VBA and the Board are ordered to stay decisions regarding claims for benefits for spina bifida from children of Veterans who were allegedly exposed to herbicides while serving in Thailand, during the period beginning on January 9, 1962, and ending on May 7, 1975. *See* BWNVV at § 4(d)(3).

6. The stays shall remain in effect until January 1, 2020. This memorandum shall not preclude VA from complying with an order of the Board issued before the date of this memorandum, directing a grant of benefits to a person whose claim otherwise is subject to stay under this memorandum, or with the order of any court.

Robert L. Wilkie